**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4313**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

WILLIAM TODD CHAMBERLAIN,

Defendant – Appellant.

---------------------------------------

NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS; CATO INSTITUTE,

Amici Supporting Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Malcolm J. Howard, Senior District Judge.  (5:14−cr−00128−H−2)

Submitted:  July 31, 2017                    Decided: August 18, 2017

Before GREGORY, Chief Judge, and WILKINSON, NIEMEYER, MOTZ, TRAXLER, KING, SHEDD, DUNCAN, AGEE, KEENAN, WYNN, DIAZ, FLOYD, THACKER, and HARRIS, Circuit Judges.

Vacated by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judges Wilkinson, Niemeyer, Motz, Traxler, King, Shedd, Duncan, Agee, Keenan, Diaz, Floyd, Thacker, and Harris joined.

———————

**ARGUED:** Elliot Sol Abrams, CHESHIRE PARKER SCHNEIDER & BRYAN, PLLC, Raleigh, North Carolina, for Appellant. Stephen Aubrey West, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Samuel B. Hartzell, WOMBLE CARLYLE SANDRIDGE & RICE, LLP, Raleigh, North Carolina, for Appellant. Kenneth A. Blanco, Acting Assistant Attorney General, Trevor N. McFadden, Deputy Assistant Attorney General, James I. Pearce, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; John Stuart Bruce, United States Attorney, G. Norman Acker, III, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. Thomas K. Maher, NORTH CAROLINA OFFICE OF INDIGENT DEFENSE SERVICES, Durham, North Carolina; Ilya Shapiro, CATO INSTITUTE, Washington, D.C.; Abbe David Lowell, Scott W. Coyle, CHADBOURNE & PARKE LLP, Washington, D.C., for Amici Curiae.

———————

2

WYNN, Circuit Judge:

This case calls upon us to reconsider our anomalous rule permitting the pretrial restraint of a defendant's innocent property pursuant to the federal criminal forfeiture statute, 21 U.S.C. § 853. Arguing that the Supreme Court's recent decision in *Luis v. United States*, 136 S. Ct. 1083 (2016), undermined the jurisprudential foundation of our earlier decisions interpreting that statute, Defendant William Chamberlain asks us to abandon our existing rule and join our sister circuits in holding that Section 853 does not authorize such restraint. For the reasons set out below, we agree to do so. Accordingly, we overrule our precedent construing Section 853 and other identically phrased restraint provisions allowing the pretrial restraint of substitute assets and vacate the district court's order relying on that precedent.

I.

Preliminarily, we address the procedural posture of this appeal. This case initially was argued before a panel of this Court on January 26, 2017. At that time, the parties renewed their dispute regarding the degree to which *Luis* abrogates our earlier holdings construing Section 853 to permit the government to restrain a criminal defendant's untainted assets before trial. As below, the government conceded that the property at issue is not traceable to any alleged crime and is thus subject to pretrial restraint, if at all, as substitute property pursuant to 21 U.S.C. § 853(p). The government also agreed that, following *Luis*, the Constitution prohibits the pretrial restraint of innocently-obtained property when it is needed by a criminal defendant to obtain counsel. The government nonetheless asserted that the restraining order was proper under our existing rule that the

3

government may restrain a criminal defendant's "substitute property" pending trial under 21 U.S.C. § 853(e)(1)(A), *see United States v. Bollin*, 264 F.3d 391, 421–22 (4th Cir. 2001)—a rule, the government maintained, that *Luis* did not abrogate.

Following the circulation of a proposed opinion to the full Court, Defendant submitted, as a supplemental authority, a brief submitted by the government to the Supreme Court in *Honeycutt v. United States*, 137 S. Ct. 1626 (2017). In that brief, the government asserted that, under *Luis*, Section 853(e)(1)(A) does not permit the pretrial restraint of substitute property. Br. of Resp't at 36, *Honeycutt*, No. 16-142 (Feb. 22, 2017). In light of Defendant's submission, the government moved the panel to remand and, *inter alia*, represented that it would not seek pretrial restraint of any of Defendant's assets not traceable to his alleged offense. At that point, the Court voted unanimously to set the matter for immediate en banc review.

After the case was calendared for en banc review, the government submitted a supplemental brief in which it asks us to overrule our existing precedent and hold that Section 853(e) does not authorize the pretrial restraint of substitute assets. In short, the government now agrees with Defendant's proposed construction of Section 853(e). Accordingly, by unanimous vote of the Court, this matter is being resolved by published opinion without the need for further oral argument.

## II.

The challenged order at issue in this case arises out of Defendant's alleged participation in a conspiracy to defraud the government while serving abroad in the armed forces. Between July 2009 and January 2010, Defendant was the senior Non-

4

Commissioned Officer in a U.S. Army deployment to Afghanistan that was paired with a Special Forces Group split-team. In connection with the deployment, the split-team had access to federal funds earmarked for specified military purposes, such as the purchase of equipment not otherwise available through military supply systems and the administration of humanitarian projects benefiting the Afghan population. According to the government, while overseas, Defendant—along with four other team members—conspired to steal approximately $200,000 of these funds.

Specifically, the government alleges that Defendant and his co-conspirators withdrew Afghani currency from the Finance Office at Bagram Airfield, converted it into American currency, and sent a portion of the stolen funds to the United States via money order. Aware that they would need to account for the withdrawn funds, the co-conspirators allegedly falsified receipts to conceal their theft. The government further alleges that, in connection with an investigation into the scheme, Defendant "admitted to taking money during the deployment that he knew was 'left over' from" the accounts and acknowledged that a co-conspirator "told [Defendant] during the deployment that [the co-conspirator] had 'written off' some of the . . . funds entrusted to the team." J.A. 54. The government asserts that Defendant "used approximately $1,800 of stolen federal funds to purchase two [postal money orders and] then electronically deposited the [money orders] into his USAA bank account." J.A. 36.

On June 25, 2014, the government charged Defendant and two co-conspirators in a two-count indictment alleging that the defendants: (1) conspired to knowingly and unlawfully embezzle, steal, purloin, or convert more than $1,000 in federal property, in

5

violation of 18 U.S.C. §§ 371, 641; and (2) knowingly and unlawfully embezzled, stole, purloined, or converted more than $1,000 in federal property, in violation of 18 U.S.C. § 641.[1]  The indictment included a notice, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. §§ 981(a)(1)(C) and 1956(c)(7), that the government intended to seek the forfeiture of $200,000 in funds derived from the proceeds of the alleged scheme.  This notice further indicated that, in the event that such proceeds were unavailable, the government intended to pursue forfeiture of any eligible substitute property pursuant to 21 U.S.C. § 853(p).

In April 2016, with the charges still pending against Defendant, the government sought a restraining order, pursuant to 21 U.S.C. § 853(e)(1)(A), to prevent the sale of a piece of real property owned by Defendant and his wife with an estimated value of $200,000.  In so doing, the government correctly noted that "the Fourth Circuit, unlike other circuits, permits the pre-trial restraint of substitute assets, subject to Sixth Amendment concerns."  J.A. 45.  Because Defendant's counsel advised the government that the property at issue was "not needed to pay attorney's fees," the government asserted that the proposed order would not implicate Defendant's rights under the Sixth Amendment and was thus permissible under Fourth Circuit precedent.  J.A. 45–46.

Though acknowledging our unique rule permitting the pretrial restraint of substitute assets, Defendant argued that our decisions setting out this rule were abrogated by the Supreme Court's recent decision in *Luis*.  The district court disagreed and, concluding that it was bound to abide by our pre-*Luis* precedent, ordered Defendant to

---

[1] In October 2014, both of Defendant's co-defendants entered guilty pleas before a magistrate judge.  The two other alleged co-conspirators earlier pleaded guilty to a criminal information.

6

refrain from selling or otherwise disposing of the property during the pendency of the proceedings against him. *United States v. Chamberlain*, No. 5:14–CR–128–2–H, 2016 WL 2899255, at \*2 (E.D.N.C. May 17, 2016). This interlocutory appeal followed. Because the challenged order is procedurally equivalent to a preliminary injunction, we have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). *See Gang Luan v. United States*, 722 F.3d 388, 391 (D.C. Cir. 2013); *United States v. Ripinsky*, 20 F.3d 359, 361 (9th Cir. 1994); *In re Assets of Martin*, 1 F.3d 1351, 1355 (3d Cir. 1993).

A.

For most offenses, federal law provides for the forfeiture upon conviction of property associated with a defendant's crimes.[2] Codified at 21 U.S.C. § 853, the federal criminal forfeiture statute provides for the forfeiture of two types of assets upon conviction. First, Section 853(a) authorizes the forfeiture of three categories of property directly linked to a criminal defendant's offense of conviction ("tainted" property). These categories include:

> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such [offense];
>
> (2) any of the [defendant]'s property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such [offense]; and

---

[2] The government's forfeiture notice in this matter alleged that property derived from the charged conspiracy was subject to civil forfeiture pursuant to 18 U.S.C. § 981. However, by incorporating procedures applicable to criminal forfeiture proceedings in civil forfeiture actions, 28 U.S.C. § 2461(c) allows criminal forfeiture wherever civil forfeiture is authorized. *United States v. Newman*, 659 F.3d 1235, 1239 (9th Cir. 2011). Accordingly, the discussion that follows addresses the criminal forfeiture procedures set out at 21 U.S.C. § 853.

(3) in the case of a person convicted of engaging in a continuing criminal enterprise[,] . . . any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

21 U.S.C. § 853(a). Second, when such directly forfeitable property has substantially diminished in value or is otherwise beyond the court's reach, Section 853(p) separately provides for the forfeiture of "substitute property" (often referred to as "untainted" property) up to the value of any property that would have been directly subject to forfeiture under Section 853(a).

In addition to providing for the post-conviction seizure of forfeitable property, the statute further authorizes pretrial restraint of certain of a criminal defendant's assets. Specifically, upon motion by the government, Section 853(e)(1)(A) authorizes district courts to enter orders or take other necessary steps "to preserve the availability of property described in [Section 853(a)]" that "would, in the event of conviction, be subject to forfeiture." Although Section 853(e) explicitly refers only to property described in Section 853(a), we have long interpreted this provision to permit the pretrial restraint of both tainted property subject to forfeiture under Section 853(a) and untainted property— like Section 853(p) substitute property—that bears no direct relationship to the defendant's alleged offense.

Specifically, in *United States v. McKinney (In re Billman)*, 915 F.2d 916 (4th Cir. 1990), *cert. denied*, 500 U.S. 952 (1991), we explained that federal forfeiture statutes must "be liberally construed to effectuate" their purpose of preserving "the availability for forfeiture of property that can be forfeited after trial." 915 F.2d at 921. In view of

8

this broader remedial purpose, the *Billman* panel reasoned that when "the defendant has placed [potentially forfeitable assets] beyond the jurisdiction of the court, [pretrial restraint provisions] must be read in conjunction with [substitute assets provisions] to preserve the availability of substitute assets pending trial." *Id.* Such a reading, the panel explained, heeded the Supreme Court's admonishment that "[p]ermitting a defendant to use assets for private purposes that . . . will become the property of the United States if a conviction occurs[] cannot be sanctioned." *Id.* (internal quotation marks omitted).

By its terms, *Billman* addressed the parallel forfeiture provision of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1963. More recently, however, we have extended its holding to permit the pretrial restraint of substitute assets under Section 853. In particular, in *United States v. Bollin*, 264 F.3d 391 (4th Cir. 2001), we relied on *Billman* to hold that, as a matter of statutory construction, Section 853(e)(1)(A) authorizes the pretrial restraint of untainted assets. 264 F.3d at 421–22. In so doing, we explained that the "restraint and substitute assets provisions of § 853 are identical to those in the RICO statute," and we thus saw "no reason to construe them differently." *Id.* (citing *Billman*, 915 F.2d at 921). Because the government may restrain a RICO defendant's substitute assets before obtaining a conviction, we held that Section 853(e) likewise permits the pretrial restraint of substitute assets "to preserve their availability for forfeiture pending the outcome of [a defendant's] case." *Id.* at 422.

Though we are far from the only court to have considered the issue, we alone have concluded that Section 853(e) permits the government to restrain a criminal defendant's untainted substitute property before trial. In fact, after *Billman*, at least seven circuits

9

have expressly rejected the reasoning underlying our interpretation of Section 853(e) as permitting the pretrial restraint of substitute property. *See United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008); *United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007); *Ripinsky*, 20 F.3d at 363; *United States v. Floyd*, 992 F.2d 498, 501–02 (5th Cir. 1993); *In re Assets of Martin*, 1 F.3d at 1358–59; *see also United States v. Gotti*, 155 F.3d 144, 149–50 (2d Cir. 1998) (interpreting analogous RICO provision); *United States v. Riley*, 78 F.3d 367, 371 (8th Cir. 1996) (same). This weight of authority notwithstanding, we have thus far declined to revisit our minority view in the years since *Billman* was decided. *See, e.g.*, *United States v. Bromwell*, 222 F. App'x 307, 311 & n.2 (4th Cir. 2007).

Despite this longstanding conflict between this Court and our sister circuits, the Supreme Court has yet to consider squarely whether the government may restrain a defendant's innocent assets under Section 853 or other identically phrased provisions. However, in addressing related constitutional challenges in recent years, the Court has offered some insight into the scope of the government's statutory authority. Most notably, in *Luis*, the Justices repeatedly referred to Section 853 in discussing the Sixth Amendment guarantee that a criminal defendant may use legitimate, untainted assets to retain his or her counsel of choice. 136 S. Ct. at 1090–92 (plurality op.). Because the Court's constitutional holding did not rest on a close reading of the statute, the Court was not called upon to consider—much less decide—whether Section 853(e) permits pretrial restraint of untainted property that is not needed to retain counsel. Nonetheless, the *Luis*

10

Court's discussion of Section 853—and pretrial restraint more generally—presents an opportunity to revisit our existing interpretation of that provision.

With this most recent discussion in mind, we turn now to consideration of the continued viability of our present interpretation of Section 853.

B.

Our holdings in *Billman* and *Bollin* rested on our interpretation of the text of Section 853(e) and the parallel RICO restraint provision, as well as our view of Congress's broader remedial goals in enabling criminal forfeiture. Following *Luis*, however, these bases for permitting the pretrial restraint of substitute assets under these statutory provisions appear far less certain. Indeed, as discussed below, the plain language of Section 853 indicates that Congress did not intend the statute to permit such restraint. Accordingly, we hereby overrule *Billman* and *Bollin*.

Our existing interpretation of Section 853(e) draws largely on our reading of the Supreme Court's earlier decisions addressing pretrial asset restraint in connection with criminal prosecutions. For example, in *Billman*, we cited the Supreme Court's then-recent decision in *United States v. Monsanto*, 491 U.S. 600 (1989), for the proposition that "[t]he government may 'seize property based on a finding of probable cause to believe that the property will ultimately be proven forfeitable.'" 915 F.2d at 919 (quoting *Monsanto*, 491 U.S. at 615). Though acknowledging that *Monsanto* addressed the distinct issue of the government's authority to restrain *tainted* assets described under Section 853(a), we extended the Court's reasoning to include *untainted* substitute assets under Section 853(e). *Id.* at 921. As previously noted, this interpretation was compelled,

11

we posited, by the Court's admonition that federal restraint provisions must be construed liberally to prevent defendants from moving assets beyond the reach of the court in order to evade their forfeiture upon conviction. *Id.*

In *Luis*, however, the Supreme Court all but rejected such an expansive reading of its earlier holdings. Specifically, the *Luis* plurality explained that, unlike tainted assets—the defendant's ownership of which is necessarily "imperfect"—untainted assets "belong to the defendant, pure and simple." *Luis*, 136 S. Ct. at 1090. With this in mind, the plurality emphasized that the contention that "property—whether tainted or untainted—is subject to pretrial restraint, so long as the property might someday be subject to forfeiture . . . asks too much of [the Court's] precedents." *Id.* at 1091. In fact, highlighting Section 853 in particular, the plurality explained that "whether property is 'forfeitable' or subject to pretrial restraint under Congress' scheme is a nuanced inquiry that very much depends on who has the superior interest in the property at issue." *Id.* As such, the distinction between tainted and untainted assets is "an important one, not a technicality. It is the difference between what is yours and what is mine." *Id.*

Recognizing this important distinction, our reliance on *Monsanto* in interpreting Section 853(e) and the parallel RICO restraint provision to embrace both tainted and untainted assets now appears misplaced. Shorn of this reliance on an overbroad reading of Supreme Court precedent, however, our existing interpretation of Section 853(e) does not withstand close scrutiny.

By its terms, Section 853(e) authorizes restraining orders "to preserve the availability of property *described in subsection (a)*" that would be subject to forfeiture

12

upon conviction. 21 U.S.C. § 853(e)(1) (emphasis added). Although we are bound to construe this language liberally "to effectuate [the] remedial purposes" of Section 853, 21 U.S.C. § 853(o), Section 853(e)'s explicit reference to Section 853(a)—with no similar reference to Section 853(p)—indicates that Congress intended to limit pretrial restraining orders to property directly forfeitable under Section 853(a). The plain language of the statute, therefore, provides no authority to restrain substitute assets prior to trial. *See Luis*, 136 S. Ct. at 1091 (noting that Section 853(e) "explicitly authorizes restraining orders or injunctions against 'property described in subsection (a) of this section' (*i.e.*, *tainted* assets)" (emphasis in original)); *see also Ripinsky*, 20 F.3d at 363 (rejecting the contrary construction as "clearly contradictory to the plain statutory language").

The lack of express authorization to restrain untainted substitute assets is particularly noteworthy in comparison to other restraint provisions. For example, the provision at issue in *Luis* specifically authorized courts—in a separate civil action—to issue restraining orders preventing the dissipation of potential substitute assets held by defendants charged with certain banking and health care offenses. *See Luis*, 136 S. Ct. at 1087; *see also* 18 U.S.C. § 1345(a)(2)(B)(i) (providing that, "[i]f a person is alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of [such an offense]," the government "may commence a civil action . . . for a restraining order to . . . prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property *or property of equivalent value*" (emphasis added)). Absent similar language permitting such restraint under Section 853, other courts have uniformly held that the "legislative silence regarding substitute property in § 853(e)

13

precludes pre-conviction restraint of substitute property." *Jarvis*, 499 F.3d at 1204 & n.8 (collecting cases); *see also Gotti*, 155 F.3d at 148–49 (summarizing cases addressing both Section 853(e) and the parallel RICO provision).

Moreover, although we have interpreted Section 853(a) to permit courts to issue money judgments covering a convicted defendant's substitute assets, *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003), it does not follow that Section 853(e) is similarly permissive. Indeed, Section 853(p) authorizes courts to order the forfeiture of substitute property only where property "described in [Section 853(a)]" is rendered unavailable "as a result of any act or omission of the defendant." 21 U.S.C § 853(p). Framed in the past tense, this provision means that a forfeiture order covering substitute property may issue only upon a showing, after conviction, that directly forfeitable assets have been rendered unavailable. *See Jarvis*, 499 F.3d at 1204 (explaining that Section 853(p) "imposes specific preconditions on the government's ability to claim title to the defendant's substitute property, preconditions which can only be satisfied once the defendant has been convicted").

In sum, the Supreme Court has signaled that there is a firm distinction between the government's authority to restrain tainted and untainted assets in construing Section 853 and related restraint provisions. Consistent with this important distinction, when Congress intends to permit the government to restrain both tainted and untainted assets before trial, it has clearly provided for such authority. Lacking such express authorization, Section 853(e) does not by its terms permit pretrial restraint of substitute assets.

14

## III.

In reevaluating our existing precedent, we are mindful of the deference owed to our colleagues and predecessors, whose carefully reasoned conclusions we are called upon to scrutinize. In the nearly three decades since *Billman* was decided, however, federal courts have continued to explore the constitutional and statutory limitations of the government's authority to restrain the property of those who stand accused of violating federal law. With the benefit of these continuing developments, as well as the most recent pronouncements of the Supreme Court and the government's own evolving views, it is now apparent that our existing precedent construing Section 853 cannot be maintained and that reconsideration of our minority rule is appropriate.

By its plain text, Section 853(e) permits the government to obtain a pretrial restraining order over only those assets that are directly subject to forfeiture as property traceable to a charged offense. Consequently, our precedents to the contrary are overruled and the district court's order relying on those authorities is

*VACATED.*

15