**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4494

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

ANDRACOS MARSHALL, a/k/a Draco,

Defendant – Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge.  (8:13-cr-00492-DKC-3)

Argued:  May 11, 2017                     Decided:  September 25, 2017

Before AGEE, KEENAN, and HARRIS, Circuit Judges.

Motion denied by published opinion.  Judge Agee wrote the opinion, in which Judge Keenan and Judge Harris joined.

**ARGUED:** Marvin David Miller, LAW OFFICES OF MARVIN D. MILLER, Alexandria, Virginia, for Appellant.  Evan Thomas Shea, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

AGEE, Circuit Judge:

After Andracos Marshall was convicted of various crimes at trial, the Government initiated forfeiture of his substitute assets. In response to the Government's motion, the district court entered an order of forfeiture. Marshall now petitions this Court to release the subject assets so that he may hire appellate counsel of his choice for the appeal of his criminal convictions. We deny his motion for the reasons stated below.

I.

The Government filed a sealed criminal complaint against Marshall on January 3, 2014, in the United States District Court for the District of Maryland. On February 24th, the Government filed its first superseding indictment, charging Marshall and three others with several crimes, including conspiracy to distribute a controlled substance, possession of a controlled substance with intent to distribute, and conspiracy to commit money laundering. The first superseding indictment also included a forfeiture allegation, which stated that the Government would seek the forfeiture of substitute assets if the property derived from Marshall's alleged criminal actions could not be found. On November 5, 2015, the Government filed a Bill of Particulars providing notice that it intended to seek the forfeiture of approximately $59,000 from Marshall's National Institutes of Health Federal Credit Union account upon his conviction.[1] However, the Bill did not indicate

---

[1] At some point prior to this filing, the Government placed a hold on the funds in the credit union account, although the date is not readily discernible from the district court's docket.

whether the Government classified the credit union funds as assets derived from the crimes or substitute assets.[2]

On January 4, 2016, the Government filed a second superseding indictment, charging Marshall with the same crimes as the first superseding indictment but removing his co-defendants as a result of their guilty pleas. This later indictment included a forfeiture allegation as before but this time listed the $59,000 in Marshall's credit union account as property to be forfeited under § 853(a) and alleged that Marshall was responsible for at least $108 million of criminally-obtained proceeds.

After a ten-day trial, the jury found Marshall guilty on all counts. The court set sentencing for June 6, 2016, but the proceeding was later rescheduled for June 13th.

On June 10th, the Government filed a motion for order of forfeiture seeking a $108 million judgment. The district court then continued the sentencing hearing to July 13, 2016, because Marshall had not timely received the Government's sentencing memorandum. In addition, because the Government did not file the motion for order of forfeiture until three days before the previously scheduled sentencing date, the court instructed the parties to file briefs addressing the effect of the Government's delay on the forfeiture proceedings. In its brief, where it urged the court to proceed with the forfeiture, the Government stated the following:

---

[2] If a defendant is convicted of certain felonies, 21 U.S.C. § 853(a) provides for the forfeiture of property connected to the crime. If the tainted property is no longer available, § 853(p) allows for the forfeiture of substitute property. The Government's forfeiture claims in both superseding indictments were based on these statutes. The Bill of Particulars did not cite to a specific forfeiture statute.

3

In this case, the indictments provided notice [of the forfeiture] as required by [Federal] Rule [of Criminal Procedure] 32.2. Consequently, the defendant received notice that the government was seeking a money [judgment] in the amount of $108,000,000.00. In spite of being on notice of the forfeiture, the defendant did not invoke his right to request a hearing at any time after the verdict. The government did not submit a motion for forfeiture with proposed order until the last business day prior to the sentencing date. *As a result the court did not enter a preliminary order of forfeiture as soon as practicable after verdict or before sentencing [as required by Rule 32.2].*

ECF No. 358, at 4 (emphasis added).[3] Ultimately, the district court entered an order of forfeiture in the amount of $51,300,000 against Marshall at the sentencing hearing on July 13, 2016. The order did not specifically mention the $59,000 in Marshall's credit union account.

Two days later, Marshall filed a motion in the district court to release the funds in the credit union account for use in his appeal. He requested that the district court permit him to access those funds because they were not a specified part of the forfeiture order. On August 9th, the Government filed a motion for a second order of forfeiture, specifically requesting the forfeiture of the funds in Marshall's credit union account and classifying them as substitute assets under § 853(p). The district court granted the motion on August 12th. Marshall subsequently filed a motion to stay the court's second order of forfeiture pending appeal, and the district court granted the motion.

After the district court entered the second forfeiture order, Marshall filed a separate motion in this Court to use his untainted funds—the $59,000 in the credit union account—to hire appellate counsel and a motion to suspend appellate proceedings until

---

[3] "ECF" refers to the online docket of the district court.

the Court ruled on his motion for funds.[4]  We granted the motion to stay, ordered briefing limited to the motion to use funds and heard oral argument.  Marshall's motion to use funds is now ripe for decision.[5]

## II.

On appeal, Marshall argues that the Constitution requires the release of substitute assets forfeited by a defendant after conviction if the funds are needed for appellate representation.  He also contends that the Government violated Federal Rule of Criminal Procedure 32.2 by waiting several months after the verdict before seeking forfeiture of the credit union funds as substitute assets.  We address each issue in turn below.

## A.

## 1.

Criminal defendants have no federal constitutional right to an appeal, only a statutory right.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("There is, of course, no constitutional right to an appeal . . . ."); *Griffin v. Illinois*, 351 U.S. 12, 18 (1956) ("It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all."); *see* 28 U.S.C. §§ 1291–1296 (providing for appeals in

---

[4] Marshall filed a notice of appeal of his underlying conviction and sentence on August 9, 2016.  That appeal is not now before us.

[5] The parties' briefing on this motion appears to address a mixture of the motion in this Court and an appeal of the district court's denial of Marshall's motion to release funds for his appeal.  Our decision resolves the motion before this Court and renders any appeal of the district court's denial of the motion to use funds moot.

the federal court system).[6]  They do, however, have a constitutional right to appellate counsel when appellate review is available as a matter of right.  In *Miller v. Smith*, 115 F.3d 1136, 1139–41 (4th Cir. 1997) (en banc), we provided an extensive discussion of the rights available to defendant-appellants in that circumstance.  The foundation of the right to appellate counsel rests on *Griffin*, where the Supreme Court held that the Equal Protection and Due Process Clauses of the Fourteenth Amendment require states to provide indigent defendants with copies of their trial transcripts for appellate purposes.  351 U.S. at 16, 18–19.  Then, in *Douglas v. California*, 372 U.S. 353, 355–56 (1963), the Court relied on *Griffin* in recognizing that indigent defendants have a right to appellate counsel under the Fourteenth Amendment.  The Court limited that right in *Ross v. Moffitt*, 417 U.S. 600, 610, 612, 619 (1974), holding that equal protection and due process do not require states to provide counsel to indigent defendants for discretionary appellate view.  Finally, in *Evitts v. Lucey*, 469 U.S. 387, 396 (1985), the Court held that defendants are entitled to effective assistance of counsel on appeal.

2.

Significantly, the Supreme Court has never held that defendants enjoy the right to counsel of choice on appeal.  But even assuming arguendo that Marshall does have that right, and further assuming that the right to appellate counsel of choice mirrors the Sixth

---

[6] We have omitted internal quotation marks, alterations, and citations throughout this opinion, unless otherwise noted.

6

Amendment right to trial counsel of choice, the Supreme Court has plainly foreclosed

Marshall's request to use his forfeited funds to hire appellate counsel.[7]

First, in *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989), the

Supreme Court addressed the issue of whether a defendant may use *tainted* funds (i.e.,

those assets connected to the crimes charged) forfeited *after* conviction to pay his trial

counsel's accumulated fees.[8]  Specifically, the Supreme Court granted certiorari to

determine whether the forfeiture statute "infringes on criminal defendants' Sixth

Amendment right to counsel of choice, and upsets the 'balance of power' between the

Government and the accused in a manner contrary to the Due Process Clause of the Fifth

Amendment." *Id.* at 623–24.

The Court began by reaffirming the longstanding principle that "impecunious

defendants [do not] have a Sixth Amendment right to choose their counsel." *Id.* at 624.

Although criminal defendants have the "right to adequate representation," those

defendants "who do not have the means to hire their own lawyers have no cognizable

complaint so long as they are adequately represented by attorneys appointed by the

---

[7] The Supreme Court has recognized a right to trial counsel of choice under the Sixth Amendment. *United States v. Gonzales-Lopez*, 548 U.S. 140, 144 (2006) ("We have previously held that an element of [the Sixth Amendment right to assistance of counsel] is the right of a defendant who does not require appointed counsel to choose who will represent him."). Any right to appellate counsel of choice, if it were deemed to exist, is coextensive with the right to trial counsel of choice, at best. *See Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 628 (1989) (recognizing that "there is no . . . distinction between, or hierarchy among, constitutional rights"). In any event, we only assume a right to appellate counsel of choice and specifically do not decide that question here.

[8] Although the *Caplin & Drysdale* defendant filed a motion to use the forfeited funds prior to his conviction, he later entered into a plea agreement with the Government, and the district court denied the motion as moot. 491 U.S. at 621.

courts." *Id.* A criminal defendant does, however, have the right to choose counsel that he "can afford to hire, or who is willing to represent the defendant even though he is without funds." *Id.* at 624–25. The Court then held that the Sixth Amendment does not require the release of forfeited funds to pay for trial counsel postconviction because "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Id.* at 626. Because the defendant's forfeited property was connected to the crime, title to the forfeited property vested in the Government "at the time of the criminal act giving rise to forfeiture." *Id.* at 627. The Supreme Court succinctly stated its holding as to the defendant's Sixth Amendment claim: "It is our view that there is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense." *Id.* at 631. The Court "therefore reject[ed] petitioner's claim of a Sixth Amendment right of criminal defendants to use assets that are the Government's—assets adjudged forfeitable, as [the defendant's] were—to pay attorneys' fees, merely because those assets are in their possession." *Id.* at 632. The Court then dismissed the appellant's Fifth Amendment argument with little discussion, holding that, "[e]ven if . . . the Fifth Amendment provides some added protection not encompassed in the Sixth Amendment's more specific provisions, we find petitioner's claim based on the Fifth Amendment unavailing." *Id.* at 633.

Subsequently, in *Luis v. United States*, 578 U.S. __, 136 S. Ct. 1083 (2016), the Supreme Court resolved the question of whether the Government may freeze *untainted* assets (i.e., those assets not connected to the crimes charged) *pretrial* that a defendant needs to hire counsel of her choice. The Court answered that query in the negative.[9] In doing so, the Court explained how the Sixth Amendment provides the "fundamental" right to counsel of choice, *id.* at 1088–89, and rejected the Government's "wish[] to guarantee that . . . funds will be available later to help pay for statutory penalties (including forfeiture of untainted assets) and restitution, should it secure convictions," *id.* at 1089.[10]

Initially, the Court focused on the character of Luis' assets ("the property here is untainted; *i.e.*, it belongs to the defendant, pure and simple"), and distinguished those assets from "a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime." *Id.* at 1090. In those examples, "the defendant's ownership interest is imperfect" in that the assets "belong[] to the victim[ or the Government], not to the defendant." *Id.* Luis' assets, however, were untainted, so title and ownership of those assets belonged to her. *Id.* That factor—the untainted character of the assets—distinguished the holding in *Caplin & Drysdale* because that case involved tainted assets, where the title to the assets vested in

---

[9] A plurality of four Justices provided the relevant analysis, while Justice Thomas concurred in the judgment only.

[10] As in *Caplin & Drysdale*, the Supreme Court set out to address the defendant's constitutional objections under both the Fifth and Sixth Amendments. *Luis*, 136 S. Ct. at 1088. However, because the Court found that restraint of Luis' assets violated the Sixth Amendment, it did not reach the Fifth Amendment question.

the Government upon commission of the crime.[11]  In other words, at the time of the applicable forfeiture in *Caplin & Drysdale*, the defendant had no ownership interest and no right of title in the subject assets, whereas the defendant in *Luis* did have such an interest.

Expanding upon the respective property interests of Luis and the Government, the Court proceeded to balance those interests.  The Court noted that its prior forfeiture cases, including *Caplin & Drysdale*, established "that whether property is forfeitable or subject to pretrial restraint under Congress' scheme is a nuanced inquiry that very much depends on who has the superior interest in the property at issue."  *Id.* at 1091.  In *Luis*, the Government's interest in the property at issue was a contingent future interest, which could vest only postconviction.  *Id.* at 1092–93.  Pretrial, however, Luis still owned the property "free and clear."  *Id.* at 1092.  Thus, in the pretrial context, Luis' Sixth Amendment right to counsel of choice outweighed "the Government's contingent interest in securing its punishment of choice (namely, criminal forfeiture) as well as the victims' interest in securing restitution (notably, from funds belonging to the defendant, not the victims)."  *Id.* at 1093.  Without diminishing the importance of the Government's and victims' interests, the plurality noted that those interests did not "enjoy constitutional protection" and were not as essential to an "effective criminal justice system" as the defendant's right to counsel of choice.  *Id.*  Thus, the Court "conclude[d] that [Luis] ha[d]

---

[11] The Court also discussed its decision in *United States v. Monsanto*, 491 U.S. 600 (1989), released on the same day as *Caplin & Drysdale*, where the Court permitted the pretrial restraint of tainted assets.  *Luis*, 136 S. Ct. at 1091.  The plurality concluded that, like *Caplin & Drysdale*, *Monsanto* did not permit the pretrial restraint of Luis' untainted assets.  *Id.*

a Sixth Amendment right to use her own innocent property to pay a reasonable fee for the assistance of counsel" pretrial. *Id.* at 1096.[12]

3.

To apply the principles from *Caplin & Drysdale* and *Luis*, we first observe that the case at bar involves the restraint of untainted assets postconviction. While *Caplin & Drysdale* addressed the restraint of *tainted assets postconviction* and *Luis* involved the restraint of *untainted assets pretrial*, these cases taken together require the conclusion that Marshall may not use his forfeited assets to hire appellate counsel. *Caplin & Drysdale* and *Luis* firmly establish that the right to use forfeited funds to pay for counsel hinges upon ownership of the property at issue—here the credit union funds forfeited after conviction as § 853(p) substitute assets. *E.g.*, *Luis*, 136 S. Ct. at 1091 (explaining that "whether property is forfeitable or subject to pretrial restraint under Congress' scheme is a nuanced inquiry that very much depends on who has the superior interest in the property at issue").

In general, if the defendant owns the property, he is entitled to use it for his defense; if he does not own the property, he may not. Title in property connected to the crime of conviction vests in the Government when the crime is committed. 21 U.S.C. § 853(c) ("All right, title, and interest in property [subject to criminal forfeiture] vests in

---

[12] As previously mentioned, Justice Thomas concurred only in the judgment. *Luis*, 136 S. Ct. at 1096 (Thomas, J., concurring in the judgment). Eschewing the plurality's "atextual balancing analysis," Justice Thomas concluded that the text of the Sixth Amendment and the common law of criminal forfeiture prohibited the restraint of Luis' untainted assets, thereby obviating the necessity of any other inquiry. *Id*. at 1101.

11

the United States upon the commission of the act giving rise to forfeiture under this section."); *accord Caplin & Drysdale*, 491 U.S. at 627–28. Conversely, title to substitute property vests in the Government upon order by the district court after conviction, at the latest. *See, e.g.*, *Luis*, 136 S. Ct. at 1101 (Thomas, J., concurring in the judgment) ("A criminal defendant's untainted assets are protected from Government interference *before trial and judgment*." (emphasis added)); *United States v. Chamberlain*, No. 16-4313, __ F.3d __, 2017 W.L. 3568493, at *6 (4th Cir. Aug. 18, 2017) (en banc) (confirming "that a forfeiture order covering substitute property may issue only upon a showing, after conviction, that directly forfeitable assets have been rendered unavailable").[13] Thus, title to Marshall's substitute property—the credit union account funds—had vested in the Government by the issuance of the district court's forfeiture order following his conviction. Consequently, Marshall does not own the property he seeks to use to pay appellate counsel. Title to that asset vested in the Government as Marshall's title was divested by virtue of the statutory forfeiture order. Marshall is thus left only with an argument that his right to appellate counsel of choice—his only interest in the property at issue—somehow outweighs the Government's interest in the credit union funds he no longer owns.

---

[13] In *United States v. McHan*, 345 F.3d 262, 271–72 (4th Cir. 2003), we "construe[d] the [forfeiture] statute liberally" to hold that title to substitute property, like tainted property, vests in the Government when the crimes leading to the forfeiture are committed, despite § 853's silence on when the Government's interest in § 853(p) substitute property vests. We later overturned our precedent—on which *McHan* partially relied—regarding a similarly liberal construction of a different provision of the forfeiture statute in *Chamberlain*, but we need not address whether that holding has any effect on our decision in *McHan* at this time because the overturned precedent dealt only with pretrial, preconviction forfeiture.

The Supreme Court, however, has implicitly, if not directly, held that the Government's interest in substitute property postconviction overrides any Sixth Amendment right of a defendant to those funds. *Caplin & Drysdale*, 491 U.S. at 631 (holding that the "strong governmental interest . . . overrides any Sixth Amendment interest" in that case because "[o]therwise, there would be an interference with a defendant's Sixth Amendment rights whenever the Government freezes or takes some property in a defendant's possession before, during, or *after* a criminal trial" (emphasis added)). The Court rejected the contention that a defendant could claim "a share of the forfeited assets postconviction [because that] would suggest that the Government could never impose a burden on assets within a defendant's control that could be used to pay a lawyer." *Id.* It would be illogical to hold that a defendant is entitled to use assets that he no longer owns to hire counsel. *See id.* at 628 ("But given the Government's title to [the defendant's] assets upon conviction, to hold that the Sixth Amendment creates some right in [the defendant] to alienate such assets, or creates a right on [the attorney's] part to receive these assets, would be peculiar. . . . There is no constitutional principle that gives one person the right to give another's property to a third party, even where the person seeking to complete the exchange wishes to do so in order to exercise a constitutionally protected right."); *id.* at 626 ("Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond the individual's right to spend *his own money* to obtain the advice and assistance of counsel." (emphasis added)).

13

With Marshall's side of the scale bare, the Government's mere ownership of the forfeited credit union funds tips the balance in its favor. The Government, moreover, has additional interests in the forfeited property, as its legitimate interest in that property "extends to recovering *all* forfeitable assets" and in making any victims whole through restitution. *Id.* at 629. In addition, the Supreme Court has recognized that the common law provided for forfeiture of "only those goods and chattels that a man has *at the time of conviction.*" *Luis*, 136 S. Ct. at 1094 (quoting 4 William Blackstone, *Commentaries* *388 (1765)); *accord id.* at 1099 (Thomas, J., concurring in the judgment) (agreeing with the plurality that, "for *in personam* criminal forfeitures like that at issue here, any interference with a defendant's property traditionally required a conviction" and elaborating that "[f]orfeiture was a part, or at least a consequence, of the judgment of conviction").

When all is said and done, *Caplin & Drysdale* and *Luis* confirm that Marshall simply has no property interest or title in the credit union funds which he wishes to use to pay appellate counsel. Marshall has no constitutional entitlement to use substitute assets postconviction to hire his counsel of choice. He may not use the Government's property to "pay for his preferred representational choice," *id.* at 1089 (plurality opinion), and he is not entitled to "representation by an attorney he cannot afford," *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Constitution requires only that Marshall be represented by counsel upon his first appeal of right, and the Court will appoint counsel if the forfeiture renders him indigent or he cannot secure pro bono counsel. *See Douglas*, 372 U.S. at 355–56.

14

B.

1.

Federal Rule of Criminal Procedure 32.2 governs the criminal forfeiture process. The rule mandates that "[a] court must not enter a judgment of forfeiture in a criminal proceeding unless the indictment or information contains notice to the defendant that the government will seek the forfeiture of property as part of any sentence in accordance with the applicable statute." Fed. R. Crim. P. 32.2(a). During the forfeiture phase of the trial, "[a]s soon as practical after a verdict or finding of guilty, . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). "If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A). Finally, the rule addresses substitute property in particular:

> (e) Subsequently Located Property; Substitute Property.
>
>> (1) *In General*. On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that:
>>
>>> (A) is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or
>>>
>>> (B) is substitute property that qualifies for forfeiture under an applicable statute.
>>
>> (2) *Procedure*. If the government shows that the property is subject to forfeiture under Rule 32.2(e)(1), the court must:

15

(A) enter an order forfeiting that property, or amend an existing preliminary or final order to include it; and

(B) if a third party files a petition claiming an interest in the property, conduct an ancillary proceeding under Rule 32.2(c).

(3) *Jury Trial Limited*. There is no right to a jury trial under Rule 32.2(e).

Fed. R. Crim. P. 32.2(e).

2.

In this limited proceeding, Marshall objects only to the late filing of the Government's motion to forfeit his *substitute* assets. *See, e.g.*, Opening Br. 21 ("The prosecution's failure to follow forfeiture law should preclude forfeiture of these innocent funds."); *id.* ("Only after sentencing and forfeiture had been decided when Mr. Marshall asked for these funds, which had been restrained as possible substitute assets on 1 October 2015 but never sought, did the prosecution make its first motion to forfeit these funds. That late move may not deprive him of his constitutional rights."). The rule, however, clearly states that, "[o]n the government's motion, the court may *at any time* enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1)(B) (emphasis added).

Marshall relies on the rule's requirement that, "[a]s soon as practical after a verdict or finding of guilty, . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute." Fed. R. Crim. P. 32.2(b)(1)(A). He also argues that the district court violated the rule's instruction that, "[i]f the court finds that property

16

is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria." Fed. R. Crim. P. 32.2(b)(2)(A). The court, however, could not determine whether the substitute assets were forfeitable until the Government filed its motion, and Rule 32.2(e) does not require the Government to make its motion at any particular time.

In any event, a violation of Rule 32.2 does not automatically require this Court to vacate the forfeiture order. In *United States v. Martin*, 662 F.3d 301, 308 (4th Cir. 2011), the Court held that the timing requirements in Rule 32.2 were "time-related directive[s]."[14] "A time-related directive keeps a process moving by creating a deadline that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Id.* Furthermore, "missing [a] deadline set in Rule 32.2 does not deprive a district court of jurisdiction to enter orders of criminal forfeiture so long as the sentencing court makes clear prior to sentencing that it plans to order forfeiture." *Id.* at 307. As in *Martin*, Marshall was "fully aware of both the pending forfeiture itself and . . . the exact amount," as the Government provided notice in its Bill of Particulars that it intended to obtain the funds in his credit union account through forfeiture as early as November 5, 2015, two

---

[14] *Martin* involved an older form of Rule 32.2, but *Martin*'s reasoning applies as well to the current form of the rule. *See United States v. Chittenden*, 848 F.3d 188, 202–03 (4th Cir. 2017) (applying *Martin* to the current version of Rule 32.2).

17

and a half months before trial. *Id.* at 309.[15] Therefore, Rule 32.2 is not a basis upon which to grant Marshall's motion.

III.

For these reasons, Marshall's motion to use his forfeited funds to hire appellate counsel of his choice is

*DENIED*.

---

[15] Marshall points the Court to *United States v. Shakur*, 691 F.3d 979, 988–89 (8th Cir. 2012), which held, inter alia, that a violation of the Rule 32.2 timeliness requirements requires a court to deny the Government's motion to order forfeiture. *Shakur*, however, did not address the forfeiture of substitute assets. Besides being distinguishable from this case, *Shakur* is not controlling, unlike *Martin*, so this argument is unpersuasive. Marshall also relies on an unpublished case from this Circuit, *United States v. Jenkins*, 677 F. App'x 845 (4th Cir. 2017). In *Jenkins*, the Court held that the district court's failure to abide by the Rule 32.2 procedures constituted plain error. *Id.* at 848. The Court also cited to *Shakur* but did not address *Martin*. *Id.* Although the Court found that the district court "failed to enter a preliminary order of forfeiture prior to Jenkins' sentencing hearing," it focused on the fact that "the superseding indictment did not contain a forfeiture allegation." *Id.* This case is therefore distinguishable because here the Government included forfeiture allegations in both of its superseding indictments and its Bill of Particulars. And *Jenkins* did not address substitute assets. In any event, as an unpublished case, *Jenkins* is not binding.