**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-4494**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANDRACOS MARSHALL, a/k/a Draco,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge.  (8:13-cr-00492-DKC-3)

Submitted:  October 25, 2018                    Decided:  November 6, 2018

Before KING, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Erek L. Barron, WHITEFORE, TAYLOR & PRESTON, LLP, Bethesda, Maryland, for Appellant.  Robert K. Hur, United States Attorney, Brandon Moore, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Andracos Marshall appeals from his jury convictions for various drug and money laundering charges. On appeal, Marshall contends that the Government violated his right to counsel of choice by seizing an untainted bank account pretrial, preventing him from paying an attorney. We affirm.

In February 2014, Marshall was indicted with others for possession with intent to distribute cocaine, conspiracy to possess with intent to distribute cocaine, and conspiracy to commit money laundering. The indictment also provided Marshall with notice that, in the event of a conviction, the Government would seek forfeiture, including a money judgment of $108,000,000.

On September 3, 2015, the Government filed a motion to disqualify defense counsel Marvin Miller. The Government asserted that Miller labored under conflicts of interest arising from his representation of both Marshall and his codefendant, whose appeal was currently pending, and from the fact that the codefendant's case included protective orders prohibiting dissemination of certain information to Marshall. Miller filed a response, averring that Marshall was entitled to his counsel of choice: Miller and co-counsel Arthur Reynolds. Marshall filed a waiver stating that he had consulted with "independent counsel" (Reynolds) and determined that there was no potential conflict of interest. He stated that he understood that he could "choose other representation," but nonetheless wished to be represented by Miller. Further, Marshall waived any conflict that might exist.

At a hearing on the motion in September 2015, the district court offered Marshall the opportunity to consult, at Government cost, with an appointed lawyer who was "unconnected with Mr. Miller." Marshall declined. After questioning Marshall, the court determined that he was knowingly and voluntarily giving up his right to a conflict-free attorney. Thus, the court denied the Government's motion.

Also in September, the IRS sought a seizure warrant under seal for $59,000.28, against a National Institute of Health Federal Credit Union bank account (the "credit union account") that Marshall jointly held with his wife. The IRS averred that the account was "at least" a "substitute asset" related to Marshall's criminal behavior. In October, the IRS sent out notices of civil forfeiture. Marshall and his wife both filed administrative claims.

On November 5, the Government filed a Bill of Particulars, identifying its intent to seek criminal forfeiture of the credit union account. In January 2016, after the other defendants pled guilty, a grand jury returned a superseding indictment against Marshall, again providing notice of the Government's intent to forfeit the credit union account. Prior to the district court's charge to the jury during Marshall's trial, the court conducted an inquiry regarding the forfeiture allegations and whether the jury should be retained to determine the forfeitability of certain property. The Government stated that it would not be seeking to forfeit the credit union account as directly traceable to criminal conduct but that it would, if appropriate, seek forfeiture of those funds as substitute assets. The Government reiterated its intent to seek a money judgment in the amount of

3

$108,000,000 as part of Marshall's sentence. Marshall was convicted of all counts on February 8, 2016.

On June 10, the Government filed a motion for forfeiture in the form of a money judgment against Marshall. On July 13, the district court sentenced Marshall to 276 months in prison and entered a forfeiture order for a money judgment of $51,300,000. The credit union funds were not included as substitute assets or otherwise in the Government's motion or the district court's order. On July 15, Marshall filed a motion requesting that the district court release the credit union funds so that he could use the funds to pay his appellate attorney and for other appellate costs. He relied on the Supreme Court's decision in *Luis v. United States*, 136 S. Ct. 1083 (2016), which held that the pretrial restraint of untainted assets violated the Sixth Amendment's right to trial counsel of choice if those funds were necessary to pay counsel.

On July 29, the district court entered its judgment, rendering the forfeiture order final. On August 5, the Government filed an opposition to Marshall's motion to release funds, and on August 9, the Government filed its motion to forfeit the credit union account as substitute assets. On the same day, Marshall filed a notice of appeal. On August 12, after a hearing in which Marshall alleged that the Government's last-minute attempt to forfeit the credit union account was untimely, the district court entered a second forfeiture order which both forfeited the credit union account as substitute assets and denied Marshall's motion for release of the funds. The district court held that "there is no question in my mind that the holding [in *Luis*]" is "limited to the pretrial freezing or seizing of untainted assets." The court further found no undue delay.

4

On August 26, Marshall filed a motion in this court, seeking to use funds from the credit union account to pay his appellate attorney. We suspended briefing, pending a resolution of the motion. We heard oral argument on the motion and ruled that Marshall had no property interest in the credit union account after his conviction and, thus, had no constitutional entitlement to use the assets to pay his appellate attorney. *United States v. Marshall*, 872 F.3d 213, 221-22 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1274 (2018). We further held that the Government properly complied with forfeiture statutes and did not cause prejudicial delay. *Id.* at 222-23.

A new briefing order was entered and briefing on the merits is now complete. On appeal, Marshall raises just one claim: whether the pretrial restraint of the credit union account denied Marshall his right to counsel of choice at trial and, thus, requires a new trial. Specifically, Marshall contends that the Government violated his Sixth Amendment rights by placing him in the untenable position of attempting to have his counsel disqualified, while at the same time eliminating his ability to pay for new counsel if he believed his current counsel was indeed conflicted.

In his opening brief, Marshall contends that the denial of his Sixth Amendment right should be reviewed de novo. *See United States v. Singleton*, 107 F.3d 1091, 1097 n.3 (4th Cir. 1997) (concerning determination of the validity of a waiver). The Government asserts, however, that Marshall's claim is subject to plain error review because, in the district court, Marshall did not claim that the pretrial restraint infringed his right to trial counsel of choice. *See United States v. Cohen*, 888 F.3d 667, 680 (4th Cir. 2018) (reviewing unpreserved claim of Sixth Amendment error under plain error

5

standard). In his reply brief, Marshall avers that, while he did not raise the issue below, plain error review should not apply because he was forced to either raise the claim pro se or rely on his impaired and "obviously conflicted" trial counsel to raise the issue. In addition, *Luis* had not yet been decided at the time, and Marshall contends that it was, therefore, unclear whether the Government's pretrial seizure of untainted funds was improper.

We find that Marshall's arguments essentially amount to claims of ineffective assistance of counsel because his attorney failed to raise the claim and/or properly counsel him, or prosecutorial misconduct based upon the Government's intent to prevent him from hiring the attorney of his choice. These contentions raise different issues altogether, and in any event, the reasons for the failure to object do not alter the standard of review. *See United States v. Soto*, 794 F.3d 635, 650 n.11 (6th Cir. 2015) (noting that, even where good cause exists for the failure to object, plain error review still applies to forfeited claim).

Marshall did not at any time in the district court, either pro se or through counsel, state that he did not wish to be represented by Miller or that he was unable to pay for other counsel. To the contrary, Marshall filed a written waiver and testified under oath at a hearing that he wished for Miller to represent him, even after being informed of possible conflicts of interest. As such, the district court did not have the opportunity to address the issue of whether the pretrial seizure of his bank account violated his right to counsel of choice, and thus, plain error is the appropriate standard of review. Under the plain error standard, Marshall can prevail only if "(1) an error was made; (2) the error is

6

plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Harris*, 890 F.3d 480, 491 (4th Cir. 2018) (citations and internal quotation marks omitted).

We find that Marshall's claim fails under the first prong, as there was no error. The Sixth Amendment preserves a defendant's "right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). The erroneous deprivation of the right to counsel of choice in violation of the Sixth Amendment is structural error not subject to a harmless error analysis. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006).

While a defendant does not have a Sixth Amendment right to use *tainted*, forfeitable assets to hire counsel of his choice, *Caplin & Drysdale*, 491 U.S. at 631-32, "the pretrial restraint of legitimate, *untainted* assets needed to retain counsel of choice violates the Sixth Amendment." *Luis*, 136 S. Ct. at 1088 (emphasis added). So long as assets are neither traceable to nor obtained as a result of the crime, the pretrial restraint of these assets is not permitted if it will impede the defendant's right to secure counsel of choice, even if the funds might later be forfeitable as substitute assets. *Id.* at 1087-89.

In this case, while the Government appropriately sought to substitute the credit union account for unavailable tainted funds, the Government does not dispute that the seized assets were legitimate and untainted. Thus, the Government implicitly admits that Marshall should have had access to the account if he required the funds to hire his counsel of choice. Nonetheless, as the Government asserts, the seizure did not affect

7

Marshall's choice of counsel because Miller, the attorney who represented him, was the very attorney he chose. *See, e.g., United States v. Jones*, 844 F.3d 636, 641 (7th Cir. 2016) (rejecting on plain error review a Sixth Amendment claim under *Luis*, in part, because the defendant did not previously seek the restrained funds to retain counsel); *see also United States v. Chamberlain*, 868 F.3d 290, 295-97 (4th Cir. 2017) (expressly distinguishing between pretrial restraints that run afoul of the Sixth Amendment and those that do not, and concluding that federal criminal forfeiture statute permits pretrial restraint of untainted property that is not needed to retain counsel). Thus, we hold that *Luis* does not apply if the defendant did not need the restrained funds to retain counsel.

In response, Marshall does not dispute that *Luis* error requires a showing of the need for the restrained funds, but instead he argues again that the Government placed him in an untenable position, where he would "reasonably need and want new counsel but not have access to needed funds." However, because there is no indication in the record that Marshall wanted new counsel, this argument relies on Marshall's secondary argument that he was not properly informed of his rights to appointed counsel if he was indigent or to the right to counsel of choice if he had the funds. The record does not support either argument. First, Marshall requested and was appointed counsel for his arraignment and was informed, prior to arraignment, of his right to counsel. Second, the Government actually sought to disqualify counsel, but Marshall adamantly stated that he wanted Miller to represent him. Third, Marshall was also represented by Reynolds, who was also his counsel of choice and did not labor under a conflict of interest. Fourth, at no time in district court did Marshall express dissatisfaction with counsel or claim that he was

8

unable to pay for substitute counsel. There is simply no record support for Marshall's assertion that, had he better understood his rights, he would have expressed his need and/or desire for new counsel. Because Marshall was represented by the counsel of his choice, there was no need for the seized funds and, thus, no *Luis* error.

Accordingly, Marshall suffered no Sixth Amendment violation. We therefore affirm his convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*