**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 16-4183**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

MAKESHIA LASHON GLOVER,

        Defendant - Appellant.

---

**No. 16-4185**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

BOBBY EUGENE MCGUIRE,

        Defendant - Appellant.

---

**No. 16-4211**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JEFFORD HENRY, JR,  a/k/a Jeff Henry, Jr., a/k/a Malik Abdul Bey,

        Defendant – Appellant.

---

**No. 16-4212**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JEFFREY HENRY,

        Defendant - Appellant.

---

**No. 16-4213**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

LINDA MARIE HENRY, a/k/a Malak Abdulla Bey,

        Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia.  Mary G. Lewis, District Judge.  (3:14-cr-00808-MGL-4)

Submitted:  August 23, 2017                    Decided:  November 27, 2017

Before KEENAN and WYNN, Circuit Judges, and John A. GIBNEY, Jr., United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

Jeremy A. Thompson, LAW OFFICE OF JEREMY A. THOMPSON, LLC, Columbia, South Carolina, for Appellant Bobby McGuire.  Kimberly H. Albro, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellant Jefford Henry.  Louis H. Lang, CALLISON, TIGHE & ROBINSON, LLC, Columbia, South Carolina, for Appellant Linda Henry.  Jessica A. Salvini, SALVINI & BENNETT, LLC, Greenville, South Carolina, for Appellant Makeshia Glover.  Jason P. Peavy, LAW OFFICE OF JASON P. PEAVY, LLC, Columbia, South Carolina, for Appellant Jeffrey Henry.  Beth Drake, Acting United States Attorney, James Hunter May, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jefford Henry and his wife, Linda Marie Henry, their children, Jeffrey Henry and Makeshia Glover, and a family friend, Bobby McGuire (collectively, the defendants), were convicted by a jury of conspiracy to commit mail, wire, and bank fraud; mail fraud; wire fraud; false claims against the government; and conspiracy to commit money laundering.[1]  On appeal, the defendants contend that the district court erred in revoking their pro se status before trial.  Jefford and Linda Henry also appeal the district court's denial of their motions for judgment of acquittal regarding certain mail fraud counts, and Glover challenges the district court's calculation of the loss amount underlying her Sentencing Guidelines range.  We affirm the district court's judgments.

I.

The defendants first argue that the district court violated their Sixth Amendment right to self-representation when the court revoked their pro se status and appointed counsel to represent them at trial.  We review de novo a defendant's claim that he was denied his right to self-representation.  *United States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2005).

The Sixth Amendment guarantees a criminal defendant the right to represent himself.  *Faretta v. California*, 422 U.S. 806, 835 (1975).  However, the right is not absolute, *Indiana v. Edwards*, 554 U.S. 164, 171 (2008), and a court may revoke a

---

[1] *See* 18 U.S.C. §§ 2, 287, 1341, 1343, 1344, 1349, 1956.

4

defendant's pro se status if the defendant "deliberately engages in serious and obstructionist misconduct," *Faretta*, 422 U.S. at 834 n.46. We have recognized that a defendant's right to self-representation should not "be used as a tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (citations omitted).

We conclude that the district court had sufficient grounds to terminate the defendants' pro se status and to appoint counsel to represent them. From the beginning of the district court proceedings, the defendants filed meritless pro se motions based on the assertion that the defendants were "sovereign citizens."[2] After being granted pro se status before trial, the defendants continued to file frivolous motions and refused to engage in any meaningful discussion with the district court during multiple pretrial conferences. The defendants denied that they were defendants in the case, asserted that they were "idiot[s]," and refused to review discovery provided by the government. Despite the district court's many, measured admonitions, the defendants expressed no intent to alter their abusive behavior. Accordingly, the district court appointed counsel to represent them for trial. Even after trial began and the jury was selected, the defendants

___

[2] Adherents to sovereign citizen theory believe in a vast governmental conspiracy "governed by complex, arcane rules," according to which sovereign citizens are "exempt from many laws, including the obligation to pay taxes, and . . . can be empowered to seize private property, enforce legal actions against individuals, and claim money from the government." J.M. Berger, *Without Prejudice: What Sovereign Citizens Believe*, George Washington University Program on Extremism 2 (June 2016), *https://extremism.gwu.edu/sites/extremism.gwu.edu/files/downloads/JMB%20Sovereign%20Citizens.pdf*.

continued their disruptive conduct by requesting that their counsel be removed because counsel declined to advance frivolous positions.

Under these circumstances, the defendants' obstructionist behavior would have rendered it impossible for the district court to conduct the trial without appointing defense counsel. *See Bush*, 404 F.3d at 271 ("[T]he government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." (internal quotation marks and citation omitted)); *United States v. Weast*, 811 F.3d 743, 748-50 (5th Cir. 2016) (holding that district court was justified in refusing to allow defendant to represent himself when he disrupted pretrial hearings, refused to answer court's questions, and "barraged the court with bizarre filings" (internal quotation marks omitted)). In light of the defendants' consistently egregious conduct, we reject the defendants' contention that the district court was required to wait until the trial began to determine whether their conduct would interfere with court proceedings before appointing counsel. Accordingly, we conclude that the district court did not violate the defendants' Sixth Amendment rights by revoking the defendants' pro se status and appointing counsel to represent them.

## II.

Jefford and Linda Henry (collectively, the Henrys) also argue that the district court erred in denying their motions for judgments of acquittal on Counts 2 through 5 and 7 through 9 of the superseding indictment, which alleged violations of the federal mail fraud statute, 18 U.S.C. § 1341. In these counts, the Henrys were charged with writing

and mailing to their creditors checks drawn on a closed bank account, which the Henrys attempted to fund with a $2,000,000 fraudulent check. The Henrys maintain that the checks written from the closed bank account did not deprive their creditors of any property interest, because the recipients of the checks did not satisfy or release the debts and the creditors retained the ability to sue on those debts. We disagree, and conclude that the district court properly denied the Henrys' motions for judgments of acquittal.

We review a district court's denial of a Rule 29 motion for judgment of acquittal de novo. *United States v. Jaensch*, 665 F.3d 83, 93 (4th Cir. 2011). In doing so, we view the evidence in the light most favorable to the government, and ask whether a rational fact-finder could find the elements of the offense beyond a reasonable doubt. *United States v. Singh*, 518 F.3d 236, 246 (4th Cir. 2008).

The federal mail fraud statute establishes criminal sanctions for anyone who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," uses the mails "for the purpose of executing such scheme or artifice or attempting so to do." 18 U.S.C. § 1341. Accordingly, the government must prove beyond a reasonable doubt "that the defendant (1) knowingly participated in a scheme to defraud and (2) mailed, or caused to be mailed, anything for the purpose of executing such scheme." *United States v. Gillion*, 704 F.3d 284, 294 (4th Cir. 2012) (citation and internal quotation marks omitted).

To prove the first element, the government must show that the defendant had a "specific intent to deprive one of something of value through a misrepresentation or other

7

similar dishonest method." *United States v. Wynn*, 684 F.3d 473, 478 (4th Cir. 2012).

However, the government need not prove that anyone "had actually been defrauded" by

the scheme or that the scheme succeeded, "so long as the act of [mail] fraud was in

furtherance of the scheme." *United States v. Bollin*, 264 F.3d 391, 407 (4th Cir. 2001),

*overruled on other grounds by United States v. Chamberlain*, 868 F.3d 290 (4th Cir.

2017) (en banc); *see also United States v. Binday*, 804 F.3d 558, 574 (2d Cir. 2015)

(noting that the mail fraud statute does not "require a showing that the contemplated harm

actually materialized").

Viewing the evidence in the light most favorable to the government, we conclude

that a rational trier of fact could find the essential elements of the mail fraud offense were

satisfied beyond a reasonable doubt. At trial, the government presented overwhelming

evidence that the Henrys mailed fraudulent checks to their creditors in an attempt to

induce the creditors to discharge various debts. To be convicted under the mail fraud

statute, the Henrys need not have been successful in this scheme.[3] *See Bollin*, 264 F.3d at

407; *United States v. Lee*, 427 F.3d 881, 888-91 (11th Cir. 2005) (affirming mail fraud

conviction when defendants wrote check from closed account to pay mortgage and then

sent letters to mortgage holder in furtherance of scheme); *United States v. Moser*, 123

F.3d 813, 818, 820 (5th Cir. 1997) (affirming mail fraud conviction when defendant

---

[3] We are unpersuaded by the Henrys' reliance on this Court's decision in *United States v. Adler*, 186 F.3d 574 (4th Cir. 1999), in which we affirmed the district court's judgment of acquittal when the victim creditor had no property right in the funds at issue. In contrast, here, the Henrys attempted to affect their creditors' property rights in existing obligations by extinguishing debts owed.

submitted worthless instruments to pay existing debts, but instruments were rejected). We therefore conclude that the district court properly denied the Henrys' motions for judgments of acquittal.

III.

Finally, Glover argues that the district court failed during the sentencing proceedings to make a specific factual finding regarding the date on which she joined the conspiracy. Glover contends that the district court erroneously attributed to her an intended loss amount that included losses pre-dating her participation in the conspiracy and that, as a result, the court improperly calculated her Sentencing Guidelines range. We disagree with Glover's arguments.

We review the district court's determination of the loss amount for clear error. *United States v. Allmendinger*, 706 F.3d 330, 341 (4th Cir. 2013). In calculating the Guidelines range applicable to a fraud offense, the government must establish the amount of loss by a preponderance of the evidence, and the district court "'need only make a reasonable estimate of the loss.'" *United States v. Cloud*, 680 F.3d 396, 409 (4th Cir. 2012) (quoting U.S.S.G. § 2B1.1 cmt. n.3(C)); *United States v. Miller*, 316 F.3d 495, 503 (4th Cir. 2003).

We conclude that the district court did not clearly err in determining the amount of loss attributable to Glover. Evidence introduced at trial supports the inference that Glover joined the conspiracy no later than December 2012, when she opened a bank account shortly before her co-defendant deposited fraudulent proceeds into that account.

9

Based on this date, Glover was responsible for an intended loss amount of $10,465,998 as set forth in her presentence investigation report.  We therefore hold that the district court rendered a reasonable estimate of the loss amount and affirm the court's calculation of Glover's Guidelines range.

IV.

For these reasons, we affirm the judgments of the district court.

*AFFIRMED*